ALBANY,
August, 1816.

MATTER OF
BRADSTREET.

*In the matter of* BRADSTREET, *an Insolvent Debtor.*

THE following facts were submitted by the parties to the court for their opinion, and were to be considered in the nature of a return to an alternative *mandamus* directed to the recorder of *New-York*, requiring him to sign the insolvent's discharge, or show cause to the contrary.

On the 23d *December*, 1815, one of the creditors of the insolvent applied to the recorder, under the 9th section of the insolvent act, to compel the insolvent to assign his property for the benefit of all his creditors. Regular notice having been given, such of the creditors as appeared before the recorder, at the time appointed by the notice, proved their debts, and requested an assignment. The order to assign was made, and in a few minutes thereafter certain opposing creditors appeared, and applied to have the order vacated. The following facts are stated in the affidavit of Mr. *M'Coun*, who acted as counsel for the opposing creditors. The deponent received a letter from *Boston*, enclosing certain affidavits to oppose the insolvent's discharge. On the morning of the 27th *February*, 1816, at the time appointed for the creditors to appear, while going to the recorder's office, he was met by Mr. *Fay*, one of the attorneys for the petitioning creditors and insolvent, who requested the deponent to stop and let him look at the affidavits before submitting them to the recorder, at the same time observing, that perhaps some arrangement might be made to satisfy the creditors. The deponent thereupon showed him the affidavits, and read him part of the letter accompanying them, and *Fay* consented to adjourn the business until the *Monday* following. The deponent then proceeded with *Fay* to the recorder's office, where they were informed by the recorder, that he had just granted Mr. *Van Wyck* (the other attorney for the petitioning creditors and insolvent) an order for the assignment of the insolvent's

*[Marginal note: When an order has been made for the assignment of an insolvent's estate, under the 9th section of the insolvent act, (1 N. R. L. 464.) the officer granting the order cannot afterwards vacate it, unless there has been surprise on the opposing creditors, or they have been misled by the opposite party. Where the counsel for the opposing creditors was, while going to the office of the recorder of New-York to oppose the insolvent's discharge, met by one of the attorneys for the petitioning creditors and insolvent, and detained by him in conversation and the perusal of papers relating to the opposition, and in the mean time the other attorney had appeared with the petitioning creditors before the recorder, and obtained an order for the assignment of the insolvent's estate, it was held, that under these circumstances the recorder ought to vacate the order. The officer before whom the proceeding under the 9th section of the insolvent act are had, should be satisfied that two thirds of the]*

creditors had requested that an assignment of the insolvent's estate should be made; although if it appear, after the assignment has been made, that two thirds of the creditors had not assented, the assignment is, notwithstanding, valid.

If the creditors do not attend in due time to oppose, their assent is presumed, and that they have waived their opposition.

The assignment having been made by the insolvent himself, under the 9th section of the insolvent act, he is to be discharged, on conforming with the directions of the act, in respect to petitioning creditors; he must therefore make out, under oath, an account of his creditors, and a just and true inventory of his estate, and deliver over his estate to his assignees; but he is not bound to advertise anew.

ALBANY,
August, 1816.

MATTER OF
BRADSTREET.

estate. *Fay* then expressly admitted, that he had detained the deponent, and that but for his detention, the deponent would have been in time to make his opposition, and declared that there should be no difficulty about it, and that he would go after Mr. *Van Wyck.* Shortly after, *Fay* and *Van Wyck* returned to the recorder's office, and, after some conversation, they agreed, as the deponent understood, to open the case, and then proceeded to object to the affidavits that they were not made before a proper magistrate. The recorder, to give the deponent an opportunity to show that they were properly taken, adjourned the proceedings until the next day, when the deponent having shown, to the satisfaction of the recorder, that they were taken before a competent magistrate, *Fay* and *Van Wyck* objected that they were not certified under the seal of the magistrate; upon which the recorder intimated, that if that were a good objection he would be willing to allow further time to have the affidavits properly certified; whereupon *Van Wyck* declared, that, if such were to be the case, he would not consent to give up the order of assignment which he had obtained: and there was, accordingly, an end to all further discussion before the recorder. The next day *Fay* met the deponent, and denying that there had been any collusion between him and *Van Wyck,* told the deponent that he had determined that the order should be vacated, and the case opened for a hearing, and that he had prevailed upon *Van Wyck* to consent; soon after, the deponent saw *Van Wyck,* who told him that he would consent to submit the case to the recorder, when Mr. *Sedgwick* (on whose behalf the deponent had acted in this affair) should return, and let him decide whether he would open it or not. To this the deponent replied, that such a submission of the case would be of no avail, as the recorder had already said that he could not open the case for a hearing, unless they would consent to give up the order absolutely; and that it was the deponent's wish, and was the only way in which, in his opinion, the business could be conducted, to submit the case to the recorder in the same manner as if no order had been made. *Van Wyck* replied, to the best of the deponent's recollection, " very well, we will do so, and we will let the business rest until Mr. *Sedgwick's* return; in the mean time, if any assignment is made by the insolvent, it shall be conditional." From these conversations with *Fay* and *Van Wyck,* the deponent understood that they

had consented to give up and vacate the order of assignment, and open the case for a rehearing.

To the case was annexed a paper signed by Mr. *Fay*, in which he stated that he desired that the order might be vacated, and that the opposing creditors might be allowed to come in; "it being nevertheless hereby expressly declared, that the petitioning creditors, and the insolvent, since the conversation at the recorder's office aforesaid, have objected, and now object, to vacating such order, and to the coming in of the creditors."

The case was argued at the last term, by *R. Sedgwick*, for the opposing creditors, and *T. A. Emmet*, for the insolvent.

THOMPSON, Ch. J., now delivered the opinion of the court. The counsel, in the argument of the case, have made two questions for the consideration of the court. The first relates, particularly, to this case, to wit, whether the recorder, under the circumstances stated, has the power, and ought to vacate the order for assignment made by him. The second is a more general question, involving the construction of the 9th section of the insolvent act, (1 *N. R. L.* 464.,) concerning which a diversity of opinion, as well as practice, has prevailed.

With respect to the first question, it is unnecessary to decide, whether the recorder, after having made an order for the assignment, would have a right to vacate it, when there was no surprise upon opposing creditors, or any circumstances attending the proceedings, calculated to mislead them; I am inclined to think, however, he could not. But a recurrence to the particular circumstances disclosed in this case shows, very clearly, that the counsel for the opposing creditors was prevented from making opposition to the order for assignment, by the conduct of the counsel for the insolvent; whether it was by design or not, is unnecessary to say. The willingness of the counsel, to have the order vacated, would seem very strongly to counteract any unfavourable conclusions from such conduct. We have no hesitation, however, in saying, that the recorder, under the circumstances disclosed to him, had the power, and it was his duty, to have vacated the order. The decision of this point puts an end to the present case, as it opens the proceedings to

let in the creditors to oppose the assignment. The other question made on the argument might not arise. But, for the purpose of settling the construction to be given to this section of the act, and of having a conformity in the proceedings under it, it has been thought proper to express an opinion upon the other question also.

This section applies to the case of an adversary proceeding against the insolvent, founded upon the supposition that he is wasting his property; but there is too much reason to believe, that the proceedings, under this section, are commenced and carried on at the instance of the insolvent, calculating upon the inattention of his creditors, and that he may procure his discharge without obtaining the assent of creditors, whose debts amount to two thirds of all the debts owing by the insolvent, and thus evade what is the clear and manifest policy of the statute. The point immediately in controversy, is the meaning of that part of the section which declares, that, if the insolvent shall make such assignment in ten days, " and shall conform to the directions of this act, with respect to petitioning debtors, such insolvent shall be thereupon discharged, in like manner as if he had petitioned for his discharge, in conjunction with the creditors, pursuant to this act." The insolvent is supposed to have made the assignment, and what else he has to do, is the question. The clause refers to his duties in other parts of the act, and requires of him to conform to its directions with respect to petitioning creditors. This, however, in good sense and sound interpretation, must be understood as extending only to such things as have not already been done. He is not, therefore, bound to advertise anew. That has been done. And, under this section, before any order is made for the assignment, the judge, or officer before whom the proceedings are had, must be satisfied that two thirds of his creditors have requested an assignment to be made. A notice for the purpose of the creditors appearing to assent to, or oppose, such assignment, having been given, the law presumes that the creditors have appeared, or have waived any opposition to the assignment. We must assume, therefore, that two thirds of the creditors have actually appeared and requested the assignment, and made the necessary affidavit; and, of course, nothing more is to be done by the creditors. As yet, the proceedings are presumed to have been hostile to the wishes of the insolvent, and, if he

ALBANY,
August, 1816.

MATTER OF
BRADSTREET.

still holds out, the officer before whom the proceedings are had is directed to make the assignment. The insolvent, however, in such case, is not discharged from imprisonment, or from his debts. But if the insolvent, in this stage of the proceedings, chooses to step in and make the assignment himself, and conforms, as above stated, he is discharged, both from imprisonment and from his debts; and this conformity, I apprehend, must be by making out an account of his creditors, and a just and true inventory of his estate, and delivering over his estate to his assignees. These are acts which the statute prescribes to be done by the insolvent, and which have not been done, or presumed to have been done, by any proceedings which have as yet taken place under this section of the act. This inventory and account ought to be rendered under oath. The proceedings are founded upon the allegation or apprehension that the insolvent is wasting or embezzling his property; and if willing to repel this, by truly and honestly giving up his estate, he is entitled to his discharge. An account of his creditors ought to be given, that the assignees may know who are entitled to dividends. By such account of the creditors, and the debts owing to them, it will, probably, in most cases, appear, that less than two thirds, in amount, have requested the assignment to be made. But this cannot defeat the discharge; the creditors should have appeared pursuant to the notice: and, after the order for the assignment is duly made, it is too late to call that matter in question. I am aware that this mode of proceeding is liable to very great abuse, by the insolvent's procuring one of his creditors to proceed against him under this section of the act, and by the negligence of creditors in not appearing pursuant to such notice. But most of this abuse, or fraud, grows out of the inattention of creditors: and the officer before whom the proceedings are had might, perhaps, if he suspected, or had any evidence of collusion, take measures to guard against it. He must be satisfied that creditors to two thirds in amount of the insolvent's debts do request the assignment to be made. If creditors will not appear in due time, and make opposition, if any they have, they have themselves only to blame. The proceedings under this section of the act are, perhaps, not so well guarded to prevent fraud as might be desirable; but we must give a construction to the act as we find it; and the one I have mentioned seems to be most conformable to its letter and

ALBANY,
August, 1816.

intention. I am, accordingly, of opinion, that in proceedings under this section of the act, after the order for the assignment is duly made, and the assignment executed, the insolvent is entitled to his discharge, upon making out, upon oath, a true inventory of his estate, and account of his creditors; notwithstanding it may appear, by such account, that two thirds of his creditors have not requested the assignment to be made; and this is the construction adopted by the court.